### WOLF BROS. & CO. v. HAMILTON–BROWN SHOE CO.

(Circuit Court, E. D. Missouri, E. D.   January 17, 1912.)

No. 5,262.

1. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION.

Sale of women's shoes with the words "Hamilton-Brown Shoe Company, Makers," or "Hamilton-Brown Shoe Company," and "American Lady," stamped on the soles, did not constitute unfair competition as to a manufacturer of shoes known as the "American Girl."

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

2. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION.

Sale of shoes known as "American Lady" was not unfair competition against a competing brand known as "American Girl," where the manufacturer's name was plainly marked on the carton containing each pair of shoes sold, where the brand was extensively advertised as the

---

manufacturer's product, and where it does not appear that defendant's product was ever sold as complainant's.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*]

In Equity. Bill by Wolf Bros. & Co. against the Hamilton-Brown Shoe Company. Decree directed.

Lawrence Maxwell, Simeon M. Johnson, and Percy Werner, for complainant.

Paul Bakewell, Luke E. Hart, and H. S. Priest, for defendant.

DYER, District Judge. On the 29th day of January, 1906, complainant filed its bill of complaint against the defendant in the Circuit Court of this district. The suit was for an alleged infringement of complainant's alleged trade-mark, the "American Girl," by the use of the name "American Lady" by the defendant, and for unfair trade. The prayer was for an injunction and an accounting. The Circuit Court denied the prayer and dismissed the bill. From this decision the complainant prosecuted an appeal to the Circuit Court of Appeals for the Eighth Circuit. The opinion of that court is reported in 165 Fed. at pages 413–418, 91 C. C. A. 363. On pages 414 and 415 of 165 Fed., on pages 364 and 365 of 91 C. C. A., the court said:

"This action was brought by complainant in which it charges the defendant with infringing its trade-mark 'The American Girl' by the use of the name 'The American Lady,' and the portrait of a young woman. It further charges the defendant with infringing the catch phrase, 'A shoe as good as its name.' by using the catch phrase, 'With the character of the woman.' It also charges the defendant with infringement by adopting its numeral numbers before mentioned for similar styles of shoes. It also charges defendant with unfair trade. Proofs were taken, and upon the hearing the Circuit Court dismissed complainant's bill, and the case is brought here on appeal. The first question for consideration is whether the term 'The American Girl' constitutes a valid trade-mark. We think it settled doctrine that geographical names cannot be appropriated to the exclusive use of one as a trade-mark. Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144; Delaware & H. Canal Co. v. Clark, 13 Wall. 311, 20 L. Ed. 581; Genesee Salt Co., v. Burnap, 73 Fed. 818, 20 C. C. A. 27; Ill. Watch Co. v. Elgin Nat. Watch Co., 94 Fed. 667, 35 C. C. A. 237; Elgin Nat. Watch Co. v. Illinois Watch Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365; Allen B. Wrisley Co. v. Iowa Soap Co., 59 C. C. A. 54, 122 Fed. 796. We also think that the name applied to women's shoes is descriptive merely, viz., shoes manufactured in America and to be worn by women, and not an arbitrary or fanciful name to indicate maker; hence the name 'The American Girl,' applied to shoes, is not the subject of a valid trade-mark. Nor can numeral numbers, when used to indicate styles rather than origin and manufacture, be the subject of a valid trade-mark. Shaw Stocking Co. v. Mack (C. C.) 12 Fed. 707; Dennison Mfg. Co. v. Thomas Mfg. Co. (C. C.) 94 Fed. 651. In this case we think that the numerals used by the complainant were for the purpose of indicating and designating the different styles of shoes, rather than the maker."

This would seem to dispose of the claim of complainant to a valid trade-mark in "The American Girl" and "numeral numbers." After thus disposing adversely of complainant's claim to a valid trade-mark

---

in either "The American Girl" or "numeral numbers," the court proceeds as follows:

"While it is true that geographical names may not be exclusively appropriated as a trade-mark, yet a party, having adopted a geographical name as a designation of its goods, may be protected as against *unfair trade.* * * * In this case, while complainant is not entitled to relief upon the ground that the words 'The American Girl' or the numerals applied to its several styles of shoes are valid trade-marks, yet it is entitled to protection from their use by defendant in a manner and under circumstances constituting unfair trade; *the essence of the rule being that one person shall not in the sale of his goods so act as to lead the public to believe that they are the goods of another.*"

The court, after stating very clearly the law of the case, discussed the evidence as it appeared in the record, and drew conclusions unfavorable to the defendant.

The opinion concludes as follows:

"Legitimate competition in trade is not only the right of every person, but to be commended, when of public benefit. It is only when competition is deceptive that it is condemned by the law. While the term 'The American Girl,' as applied by complainant and its predecessors, was not subject to exclusive appropriation by them, it had, nevertheless, by their long-continued use of it, come to have a secondary meaning, indicative of the origin and manufacture of the shoes to which it was applied, and had come to be recognized in the trade as meaning that such shoes were those of complainant and its predecessors. Whatever of good will and advantage resulted from this was the property of the complainant, and, while others were entitled to use the same or any similar term, because of its being common property, they could do so only on condition that they accompanied it with such distinguishing marks or matter as would plainly indicate that it was not being used with its secondary signification; that is, as pointing to the complainant as the manufacturer of the goods to which it was applied. Howe Scale Co. v. Wycoff, 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972; Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, 28 Sup. Ct. 288, 52 L. Ed. 481. Complainant is not guilty of such laches as to deprive it of an injunction; but we think an accounting should be limited to the time since the commencement of this suit. · Complainant is entitled to a decree enjoining the defendant from using the name 'The American Lady,' as applied to its shoes for women, when not accompanied with other matter clearly indicating that such shoes are of its own manufacture, and therefore not of complainant's, and from using, in connection with such name, as applied to its shoes for women, the numerals mentioned, or the catch phrase, 'With the character of the woman,' or any other phrase in simulation of the phrase 'A shoe as good as its name,' and also to an accounting as before stated."

These lengthy quotations from the opinion are made for the purpose of showing that we are now considering questions of "unfair trade," and not that of infringement of a valid trade-mark. This, therefore, being a question of unfair trade, we must look for the rule applicable thereto, with the view and for the purpose of determining whether in this particular case "unfair trade" exists.

When the mandate of the Court of Appeals was filed in this court, the following order was entered:

"The mandate of the · United States Circuit Court of Appeals for the Eighth Circuit on the appeal of the plaintiff from the decree entered herein

on February 3, 1908, and the opinion of said Court of Appeals, having been filed in this court, it is now, in pursuance of said mandate and opinion, ordered, adjudged, and decreed as follows:

"(1) Said decree entered herein on February 3, 1908, is set aside.

"(2) The defendant Hamilton-Brown Shoe Company, its servants, agents, officers, and employés, are perpetually enjoined from using the name, 'The American Lady,' as applied to its shoes for women, when not accompanied with other matter clearly indicating that such shoes are of its own manufacture, and therefore not the manufacture of the plaintiff, the Wolf Bros. & Co., and from using in connection with such name, as applied to its shoes for women, the numerals '403,'. '404,' '407,' '408,' or '397,' or the catch phrase, 'With the character of the woman,' or any other phrase in simulation of the phrase, 'A shoe as good as its name.'

"(3) The costs up to and including the entry of this decree are adjudged against the defendant, and execution therefor is awarded.

"This case is referred to H. H. Denison, Esq., as master, upon the evidence already taken in this case, and the exhibits in evidence in this case, and such further evidence as may be offered before the master by the parties to this action to ascertain and report the damages, since the commencement of this suit, which the plaintiff has suffered, and the profits, since the commencement of this suit, for which the defendant may be liable, said accounting of damages and profits to be limited to shoes sold by the defendant since the filing of the bill in this case, and which were marked with the name, 'The American Lady,' and not accompanied with any other matter clearly indicating that such shoes were of the manufacture of the Hamilton-Brown Shoe Company."

The name of the master, Mr. Denison, was inserted by agreement of counsel and at their request.

At the threshold of the hearing by the master application was made by the defendant to the court for an order confining the inquiry to certain limits. This application was denied, and in doing so the court made some remarks that have been in a manner construed as placing a wrong construction upon the language and meaning of the Court of Appeals in its decision of this case. However this may be, the purpose of the court in refusing the request was to open the door to the fullest investigation. If the court committed error in anything that was said or done by it, it is willing to correct that error, even if in doing so the correction makes it appear that the opinions then and now expressed seem contradictory. After the court had refused to limit the inquiry, the hearing before the master continued without further hindrance, and, after a lapse of nearly two years, the master filed his report, together with the evidence taken before him. To this report various exceptions have been taken by both the complainant and the defendant. These exceptions have been presented by counsel in lengthy written and oral arguments, and in briefs that show great research. These exceptions and the arguments in support of and against them have been considered by the court, and must now be disposed of.

It appears from the evidence in the case that from the day of the filing of complainant's bill (January 29, 1906) to the day the hearing was concluded by the master (March 9, 1910) that the defendant made and sold 2,529,495 pairs of "American Lady" shoes.

For convenience, this vast number of shoes may be divided into three classes, and designated as Nos. 1, 2, and 3:

| | |
|---|---|
| Number 1 embraces..................................... | 593,872 pairs |
| Number 2 embraces..................................... | 961,607 pairs |
| Number 3 embraces..................................... | 974,016 pairs |
| Total .......................................... | 2,529,495 |

The marks or brands appearing on these shoes are undisputed. On No. 1 the words, "Hamilton-Brown Shoe Company, Makers," and "American Lady," were stamped on the soles. On No. 2 the words, "Hamilton-Brown Shoe Company," and "American Lady," were stamped on the soles. On No. 3 the words "American Lady" were stamped on the soles.

[1] As to No. 1, the master finds that the words, "Hamilton-Brown Shoe Company, Makers," was "matter clearly indicating that such shoes are of its own manufacture, and therefore not of complainant's." He therefore took that class out of the accounting. To this decision the complainant filed exceptions. The master's finding in this particular is approved and the exceptions thereto are overruled.

As to class 2, the master finds that the words "Hamilton-Brown Shoe Company" are not "matter clearly indicating that such shoes are of its own manufacture, and therefore not of complainant's." The master, after announcing that decision, recommends a judgment in favor of the complainant for the sum of $190,909.83. To the conclusion reached and the recommendation made by the master as to "Class 2" the court cannot assent. The exceptions of the defendant thereto are sustained.

[2] This brings the court to a consideration of the third and last class. Of this class the defendant company made and sold within the time of the accounting 974,016 pairs of shoes marked on the soles thereof with the words "American Lady." The master finds that the words used on the soles of the shoes were not "other matter clearly indicating that such shoes are of its own manufacture, and therefore not of the complainant's." This is followed by a recommendation that judgment be entered in favor of the complainant and against the defendant for the sum of $254,401.72. On the 4th of June, 1910, the parties entered into a stipulation as follows:

"Every pair of shoes marked with the name 'American Lady' manufactured and sold by Hamilton-Brown Shoe Company between January 29, 1906, and November 15, 1909, as said shoes were sold and shipped by said Hamilton-Brown Shoe Company, was sold and delivered to its customers in a carton, each of which cartons bore prominently on the lid thereof in white letters on a black background, at the head of said lid, the words, 'Hamilton, Brown Shoe Co.'s,' and at the foot of said lid, in equally prominent letters, the name, 'American Lady,' while at the front end of each of said cartons appeared the name 'American Lady,' and the belt trade-mark of the Hamilton-Brown Shoe Company, which belt trade-mark consisted of a black strap in the center of which was a red background, the words 'Hamilton, Brown Shoe Company' appearing in white letters on the black strap and the word 'Makers' appearing in white letters on the red background; said particular way of marking each of said cartons being exemplified by 'Defendant's Exhibit, American Lady Shoe Carton, January 31, 1910, Henry D. Denison, Master.' That attached hereto, and marked 'Exhibit A,' is a duplicate of the label and markings thereon appearing on the lid of each carton containing American Lady shoes sold by defendant since the filing of the bill in this case."

This stipulation was further supplemented by one of January 11, 1911. In addition to this, it appears from the evidence in the case that the defendant spent thousands of dollars each year in advertising the "American Lady" shoe as of its own manufacture. These advertisements were coextensive with the trade itself. Each and every pair of shoes marked on the soles "American Lady" went to defendant's customers in a separate carton plainly marked on each carton "Hamilton-Brown Shoe Company, Makers." It is safe to conclude from the proof in the case and the legitimate inferences to be drawn therefrom that accompanying or preceding each shipment was an advertisement quite as full of information as was contained on the carton itself.

Taking all of these facts into consideration, the court is of opinion that the shoes were accompanied with "matter clearly indicating that such shoes are of its (defendant's) own manufacture, and therefore, not of complainant's." If the defendant had stationed at the door of each of its customers a man with strong lungs, proclaiming in stentorian voice that "these shoes are the make of the Hamilton-Brown Shoe Company of St. Louis," it is hard to perceive how the notice to buyers of shoes would have been more effective in that way than by the means adopted. The exceptions of the defendant to the master's report in regard to this particular class of shoes are sustained. There are, in addition to those heretofore assigned, other reasons why in the judgment of the court the master's report should not be approved. The record in this case is absolutely barren of evidence tending to show that any individual purchased a pair of shoes marked "American Lady," believing at the time of the purchase he was getting the "American Girl." There is no evidence in the record tending to prove that the defendant or any of its customers ever offered for sale any shoe marked "American Lady" as and for the "American Girl." There is no evidence in the record tending to prove that a single pair of shoes marked "American Lady" was ever taken from the carton in which they were inclosed before sale. There is no evidence in the record that the complainant's output was curtailed in the least by the sale of the "American Lady," nor is there any evidence that complainant lost a single customer by reason of anything done by the defendant or any of its customers. If the court correctly understood counsel for complainant, no claim to the contrary of these facts was made.

It was argued that no proof of this character was required, but that the complainant had the right to recover the profits on every pair of "American Lady" shoes sold by the defendant after the date of the filing of the bill, on the ground that the shoes themselves were not accompanied by such marks as indicated their origin.

It was contended that the defendant made it possible for its customers to offer for sale and sell defendant's manufacture as and for the manufacture of complainant. If all of this were conceded, how was it possible for the complainant to be damaged, unless some one availed himself of such an opportunity? The defendant had as much right to sell its shoes as the complainant had to sell those of its man-

ufacture, provided that it did so within the limitations stated by the Court of Appeals. In the various authorities that have been referred to by counsel, none state the rule as to unfair trade more clearly than the Court of Appeals in this case. The court said:

"The essence of the rule being that one person shall not in the sale of his goods so act as to lead the public to believe that they are the goods of another."

Applying this rule to the evidence in this case, the complainant's demand for damages must fail.

Hardly less specific is the declaration of the Court of Appeals of the Eighth Circuit in the case of Walter Baker Company v. Sydney C. Gray et al., 192 Fed. 921, recently decided. Judge Knappen of the Sixth Circuit in delivering the opinion of that court in a recent case of Rathbone, Sard & Co. v. Champion Steel Range Co. (C. C. A.) 189 Fed. 26, declared the same rule. The opinion of the court in that case is fairly well summarized in the syllabus, as follows:

"The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another.

"The fact that an article of defendant's manufacture is represented by unprincipled retailers as that of complainant does not render defendant liable for unfair competition, providing it did its legal duty in distinguishing its product from that of complainant.

"Where the deception of purchasers is not the natural result of the imitation by defendant of goods made by complainant, and there is no intention to so deceive purchasers, a case of unfair competition is not made out."

Much has been said by counsel and the master as to whether the case of Baker v. Baker, 115 Fed. 297, 53 C. C. A. 157, decided by the Circuit Court of Appeals for the Second Circuit is authority in the case now being considered.

That court is one of the strongest in the country, and its decision in Baker v. Baker has been approvingly considered by the Court of Appeals of this circuit. That case was one on an accounting in an "unfair trade" case. The court, at page 299 of 115 Fed., at page 159 of 53 C. C. A., said:

"The evidence upon the accounting failed to disclose that complainant was entitled to any recovery of profits, or any except nominal damages, by reason of the defendant's conduct. *It failed to disclose that a single person had purchased goods marketed by the defendant supposing them to be the product of the complainant, or that the complainant had lost a single customer by defendant's conduct.*"

In Howe Scale Co. v. Wycoff et al., 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972, Chief Justice Fuller said:

"The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another, and, if defendant so conducts its business as not to palm off its goods as those of complainant, the action fails."

In the present case the evidence shows that the defendant did not attempt to palm off its manufacture for the manufacture of complainant, but, upon the contrary, proclaimed in almost every con-

ceivable way that it was the manufacturer of the goods offered for sale.

In the view the court takes of this case, it does not deem it necessary to go into the question of what were and what were not proper allowances to the defendant for the expenses of manufacture. A cursory view, however, of the master's report in these particulars, shows that he was rigidly parsimonious in such allowances. The exceptions of complainant to the master's report will be overruled, and the exceptions of the defendant to the same report will be sustained.

A judgment for nominal damages ($1) will be entered in favor of the complainant against defendant. It appearing from the record that prior to the beginning of the accounting defendant tendered to the complainant the sum for which judgment is directed, the costs attending such accounting are adjudged against the complainant. An allowance of $2,000 (in addition to the amounts heretofore paid him) will be allowed the master, and will be taxed as costs in the case. Counsel may prepare a decree in conformity with this opinion, and hand it to the clerk for the consideration of the court.